**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 09-30533

GARY ALLEN PAYNE
MARY REBEKAH PAYNE

                Debtors

N. DAVID ROBERTS, JR., TRUSTEE

                Plaintiff

v.                Adv. Proc. No. 09-3173

GARY ALLEN PAYNE
MARY REBEKAH PAYNE

                Defendants

## M E M O R A N D U M

**APPEARANCES:**    N. DAVID ROBERTS, JR., ESQ.
                              Post Office Box 2564
                              Knoxville, Tennessee 37901
                              Attorney for Plaintiff

                              LAW OFFICES OF MAYER & NEWTON
                              John P. Newton, Jr., Esq.
                              1111 Northshore Drive
                              Suite S-570
                              Knoxville, Tennessee 37919
                              Attorneys for Defendants/Debtors

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

The Plaintiff, Chapter 7 Trustee, N. David Roberts, Jr., filed the Complaint commencing this adversary proceeding on September 14, 2009, objecting to the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(6)(A) (2006). The trial was held on April 21, 2010, at which the Plaintiff and both Defendants testified. Fourteen exhibits were admitted into evidence. At the close of the evidence, the court reserved ruling until May 27, 2010, and the parties were advised that a decision would be given orally from the bench. This Memorandum disposes of the May 27, 2010 hearing.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2006).

# I

The Plaintiff's action is grounded upon his contention that the Defendants have refused to obey an Order entered on May 29, 2009, directing them to turn over $2,370.00 to him within thirty days and that their failure to turn over the funds requires the denial of their discharge pursuant to § 727(a)(6)(A) which provides, in material part, that the discharge shall be granted "unless . . . the debtor has refused, in the case – to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]" 11 U.S.C. § 727(a)(6)(A). The court must construe § 727(a) more liberally in favor of the Defendants, and the Plaintiff bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); FED. R. BANKR. P. 4005.

A majority of courts has held that the statutory term "refused" in § 727(a)(6)(A) requires an element of willfulness and intent, *see, e.g., McDow v. Gardner (In re Gardner)*, 2008 Bankr. LEXIS 4304, at *7-8, 2008 WL 2766079, at *3 (Bankr. D.D.C. July 14, 2008), while a minority of courts

has held that a § 727(a)(6)(A) action should be treated as one for civil contempt, requiring merely proof that the debtor had knowledge of the order, the debtor violated the order, and the violated order was specific and definite. *See e.g., Fidelity & Guaranty Life Ins. Co. v. Settembre (In re Settembre)*, 2010 Bankr. LEXIS 331, at *23, 2010 WL 420561, at *8 (Bankr. W.D. Ky. Feb. 1, 2010).

**II**

The Defendants filed the Voluntary Petition commencing their Chapter 7 case on February 5, 2009. At Schedule B - Personal Property filed with the petition, the Debtors listed an "Anticipated Tax Refund" in the amount of $4,000.00 which they also claimed exempt in Schedule C - Property Claimed As Exempt. The initial meeting of creditors held on March 10, 2009, was continued to April 20, 2009, and again to May 4, 2009. The Defendants testified at the March 10, 2009 creditors meeting that their actual tax refund exceeded $6,200.00.

Based upon his review of the Defendants' statements and schedules and other documentation, the Plaintiff determined that the estate was due the non-exempt portion of the refund, and on May 5, 2009, the Plaintiff filed a Motion For Turnover of Nonexempt Assets to which the Defendants did not respond. Following a hearing on May 28, 2009, at which the Defendants' attorney appeared and stated that the Defendants understood they would be required to pay the non-exempt portion of the refund back and were working on getting the funds, the court granted the turnover Motion. On May 29, 2009, an Order was entered directing the Defendants to turn over the $2,370.00 non-exempt portion of the tax refund to the Plaintiff within thirty days. When the Plaintiff did not receive the funds, he commenced this adversary proceeding. On July 7, 2009, the Defendants filed an amended

Schedule B listing the tax refund at $6,370.00 and an amended Schedule C claiming $5,995.00 of the refund as exempt, thus reducing the non-exempt portion of the refund from $2,370.00 to $375.00. In January 2010, the Defendants remitted $375.00 to the Plaintiff.

The record before the court establishes that the Defendants signed their Voluntary Petition, Statement of Financial Affairs and Schedules on January 29, 2009, seven days before their attorney filed the Voluntary Petition commencing their bankruptcy case. At the time the petition, statements, and schedules were signed, the Defendants had not prepared and filed their 2008 tax return but were anticipating a $4,000.00 refund based upon refunds received in prior years. On February 2, 2009, H&R Block prepared the Defendants' 2008 tax return, which established their entitlement to a $6,370.00 refund. The return was filed electronically with the Internal Revenue Service on February 2, 2009, and Mrs. Payne testified that the Defendants received the entire refund within twenty-four hours. The court is not clear whether the refund was received directly from the Internal Revenue Service or, more likely, advanced by H&R Block. Thereafter, on February 4, 2009, the day before they filed their bankruptcy petition, the Defendants attended a family birthday party at which they used the tax refund to repay, in cash, several loans they had received during the preceding year from family members to help the Defendants during a two and a half month period while Mr. Payne was out of work. Specifically, the Defendants paid $2,500.00 to Melissa Thacker, a sister; $450.00 to Richelle Gregory, a sister; $900.00 to Sharon Payne, Mr. Payne's mother; and $800.00 to Gary Dukes, Mr. Payne's father. Additionally, the Defendants paid $500.00 for bank overdrafts, $200.00 on an electric bill, and $400.00 to Walmart for groceries and birthday presents. The remaining $620.00 was spent over the course of the month.

At the initial meeting of creditors conducted by the Plaintiff on March 10, 2009, the Defendants testified that they had received the 2008 tax refund of approximately $6,200.00 during the first week in February and that they had utilized the refund to repay family member loans. The court is satisfied that on February 5, 2009, the day the Defendants filed their bankruptcy petition, they had disposed of substantially all of the $6,370.00 tax refund.

Mr. Payne is employed as a Lead Potliner at Alcoa, earning approximately $20.00 per hour and Mrs. Payne is a housewife. At the time the petition was filed, he was bringing home approximately $2,720.00 monthly and the Defendants had monthly expenses averaging $2,716.00. During 2009, Mr. Payne's work load had been reduced and he had, on occasion, worked only thirty-two hour weeks, with the resulting loss of income. Additionally, during 2009, the Defendants were again required to borrow from family members to help support their family. When they filed their petition, the Defendants had three minor children, ranging in age from two to seven, and since then, a fourth child has been born. Mr. Payne also has partial custody of a fourteen-year old son by a previous marriage who resides in the home at least three days a week, meaning that Mr. Payne is supporting a household of six and sometimes seven people.

The Defendants are clearly not financially sophisticated individuals. Although Mr. Payne testified at the March 10, 2009 meeting of creditors that he had a prior bankruptcy in the 1990s, he and Mrs. Payne are consumer debtors who were wholly reliant upon their attorneys in the preparation and filing of their petition, statements, and schedules and in the prosecution of their bankruptcy case.

The Defendants both testified that they do not now nor have they since the commencement of their bankruptcy case had the ability to pay the Plaintiff the $2,370.00 refund as required by the May 29, 2009 turnover Order. Given the fact that substantially all of the 2008 refund had been disbursed by the Defendants prior to the commencement of their case and that it was not, therefore, property of their bankruptcy estate on February 5, 2009, the refund should not have been listed in Schedule B, nor should it have been claimed exempt in Schedule C.

The court does not fault the Plaintiff for his pursuit of the refund because the Defendants' Schedules B and C were at odds with their testimony at the March 10, 2009 creditors meeting that the tax refund had been received pre-petition and was gone when the case was filed. The Defendants, through their attorney, have never amended their schedules to evidence their pre-petition disposition of the tax refund by the transfer of its proceeds to relatives. Equally troublesome is Mr. Payne's testimony at the March 10, 2009 creditors meeting that his attorney was aware of the receipt of the refund and of its distribution to the various family members. Furthermore, the Defendants' Amended Schedules B and C, filed on July 7, 2009, continue to list the 2008 tax refund as a liquidated debt owed to the Defendants. The court does not fault the Defendants for this mischaracterization of the status of the refund.

### III

As discussed by the bankruptcy court for the District of Columbia,

> Courts diverge on whether the statutory term "refused" requires an element of willfulness and intent. The majority holds that the use of the word "refused" in § 727(a)(6)(A) requires a showing that the debtor willfully and intentionally refused to obey the court's order. Under this approach, a mere "failure" to comply with a

> court order resulting from inadvertence, mistake, or inability to comply does not constitute a refusal to obey which would justify denial of discharge under § 727(a)(6)(A).
>
> A minority of courts has found that an action under § 727(a)(6)(A) should be treated as a civil contempt proceeding, thereby negating the intent requirement from the word "refused" as willfulness is not an element to a proceeding in civil contempt.

*McDow v. Gardner (In re Gardner)*, 2008 WL 2766079 at *3 (Bankr. D. Dist. Col. 2008).

The minority view, holding that an action under § 727(a)(6)(A) should be treated as a civil contempt proceeding, is expressed as follows:

> To hold a party liable for civil contempt, the complainant must establish three elements by clear and convincing evidence: (1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite.

*Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (citations omitted).

However, as also articulated by the court in *Magack*,

> In a contempt proceeding[], the basic proposition is that all orders and judgments of the court must be complied with promptly. Nevertheless, impossibility or an inability to comply with a judicial order is a valid defense to a charge of civil contempt. Such a defense is, however, only effective where after using due diligence the person, through no fault of their own, is still unable to comply with the order. To satisfy this burden, the contemnor may not merely assert a present inability to comply, but must also introduce supportive evidence showing that all reasonable efforts to comply have been undertaken. In other words, the contemnor must establish that he has been reasonably diligent and energetic in attempting to comply with the court's mandate by taking all reasonable steps within his power to ensure compliance. *See Palmigiano v. DiPrete*, 710 F. Supp. 875, 882 (D.R.I. 1989) (crux of impossibility defense is a lack of power to carry out the orders of a court due to circumstances beyond[] one control).

*Magack*, 247 B.R. at 410-11.

Applying either standard to the Defendants in this adversary proceeding leaves the court with one conclusion. They have not "refused" to turn over the $2,370.00 non-exempt portion of the tax refund because, when they commenced their bankruptcy case on February 5, 2009, there was no refund to turn over. To state it another way, the Defendants did not have the power to carry out the May 29, 2009 Order of the court because they did not have the refund. Had the Defendants disbursed the refund subsequent to the filing of their petition on February 5, 2009, the result might well have been different. Clearly, the statements and schedules filed on February 5, 2009, were inaccurate as the Defendants' financial situation had changed after they signed their Voluntary Petition, schedules, and statements seven days earlier on January 29, 2009. The court does not attribute the lack of accurate statements and schedules to the Defendants. They were accurate when signed, and the reason for the seven-day delay in filing the Defendants' petition has not been explained.

In the court's opinion, it was incumbent upon Defendants' attorneys to ensure that, on the date filed, the bankruptcy petition, together with the accompanying statements and schedules, contained current and accurate information. These documents are filed under penalty of perjury. When a gap exists between the day the petition is signed and the day it is filed, especially if that gap is several days, the court believes it imperative that debtors' attorneys verify with debtors that the information contained in the statements and schedules remains current and accurate.

Given the facts presented, the court cannot find that the Defendants willfully "refused" to turn over the $2,370.00, nor can the court find that the Defendants are in contempt of the May 29,

8

2009 turnover Order. The facts here simply do not warrant depriving the Defendants of their fresh start by denying their discharge.

For the above reasons, an appropriate order will be entered dismissing the Complaint.

FILED: May 10, 2010

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE